**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| LAUREN LAYTON, *and all others similarly situated,*<br>Plaintiff(s), | Case No. 6:17-cv-01488-CEM-DCI |
| v. | Judge Carlos E. Mendoza |
| PERCEPTA, LLC a Delaware Limited Liability Company,<br>Defendant. | Magistrate Judge Daniel C. Irick |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION
TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION**

Despite clear guidance from this Court on the deficiencies of her arguments, Plaintiff Lauren Layton has still failed to meet her burden of showing why her class of current and former customer service employees should be conditionally certified. Plaintiff has now had two unsuccessful (and untimely) bites at the apple. The Court should deny her motion with prejudice.

To recap, Plaintiff — a former customer service representative at a call center operated by Percepta in Melbourne, Florida — moved to conditionally certify her class under the Fair Labor Standards Act ("FLSA") on May 25, 2018. (Dkt. # 45.) To support her motion, Plaintiff attached a single, unsworn declaration that failed to comply with 28 U.S.C. § 1746 (Dkt. # 45-1). Plaintiff also argued in conclusory fashion that "Defendant[] required [her] and other similarly situated employees to work approximately 1 hours per day off the clock" and that she knew that other employees had similar duties and were subject to the same pay practices and procedures, and that other

1

employees wished to join her collective action.  (*Id.*)  Percepta opposed Plaintiff's motion,

citing Plaintiff's vague allegations and the fact that Plaintiff failed to identify a single

decision, policy, or plan that required her or any putative class members to work "off the

clock."  (Dkt. # 50.)  Percepta also submitted declarations from 17 employees averring

that they have never been asked to work off-the-clock and have been paid for all hours

worked.  (Dkt. # 50-2.)  And contrary to Plaintiff's declaration, Percepta's declarations

provided detailed information regarding the employees' daily routines, how their time is

tracked, and the identity of their supervisors.  (*Id.*)

     The Court denied Plaintiff's motion on July 20 2018, agreeing with Percepta that

Plaintiff had not met her burden of showing that her class should be conditionally

certified.  (Dkt. # 52.)  In so doing, the Court noted that Plaintiff failed to attach any

affidavits in support of her motion, and that her declaration — which was unsworn —

failed to "successfully engage" Percepta's declarations to the contrary.  (*Id.* at 4.)

Critically, the Court observed that:

> Plaintiff's failure to provide affidavits from the Opt-In Plaintiffs or any
> other putative class members further confounds the Court's ability to
> determine whether the putative class members are similarly situated to
> Plaintiff, especially in the face of [Percepta]'s detailed affidavits
> suggesting that there was no common policy, plan, or scheme to violate
> the FLSA.

(*Id.* at 5.)  Additionally, the Court observed that Plaintiff's motion may be untimely since

it was filed after the deadline to add parties or amend pleadings.  (*Id.*)  In sum, "Plaintiff

[did] not demonstrate[] a reasonable basis for her claim."  (*Id.*)

     Plaintiff filed a renewed motion to certify her putative class on August 3, 2018,

but similarly, her renewed motion fails to demonstrate a reasonable basis for her claim.

(Dkt. # 53.)  Indeed, despite clear guidance from the Court on the shortcomings of her allegations and arguments, Plaintiff has still failed to meet her burden of showing that she is similarly situated to the proposed members of the class and that there is a desire by them to join the lawsuit.  *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1217 (11th Cir. 2001); *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Indeed, Plaintiff has only submitted *two* declarations: her own, and one from Opt-In Plaintiff, Deborah Estes.  (Dkt. # 53-1, 53-2.)  Stated differently — even though only *three* individuals have consented to join this action since Plaintiff filed her lawsuit over one year ago — Plaintiff failed to submit declarations from Lisa Davino and Taharria Hamilton, i.e., 2/3 of the Opt-In Plaintiffs.[1]  Clearly, Plaintiff has still failed to present any evidence that others are interested in participating in this lawsuit.

Furthermore, Plaintiff's two declarations are (still) conclusory and vague.  For example, they fail to explain how Plaintiff Layton or Opt-In Plaintiff Estes recorded their hours worked, detail when they worked off the clock or were not paid overtime, or shed any light on the timekeeping and pay practices of the proposed class.  By contrast, Percepta has submitted declarations from 17 employees that rebut Plaintiff's claims.  (Dkt. # 50-2.)  The declarations show that Plaintiff's or Opt-In Plaintiff Estes's experience of not being properly compensated was uncommon, if it happened at all.  (*Id.*)  Indeed, the declarants describe how it would be virtually impossible for call center employees to work "off the clock" because they cannot use their work telephones unless

---

[1] Plaintiff additionally submitted a declaration from Alice Cortes, a former Percepta employee who is outside of the class and lacks personal knowledge of the facts and allegations underlying this lawsuit.  (Dkt. # 53-3.)  For the reasons discussed below, the Court should disregard Ms. Cortes's declaration.

they are clocked in.   (*Id.*)   Accordingly, Plaintiff's renewed motion for conditional certification should be denied.

## ARGUMENT

## I.   CONDITIONAL CERTIFICATION IS NOT AUTOMATIC.

Plaintiff's renewed motion gives the erroneous impression that there is some sort of presumption in favor of conditional certification. "While the plaintiff's burden at the notice stage is not heavy, it is not invisible." *Lewis-Gursky v. Citigroup, Inc.*, 2017 U.S. Dist. LEXIS 31135, at *9 (M.D. Fla. Mar. 6, 2017) (internal quotations omitted); *see also Goodrich v. Covelli Family Ltd. P'ship*, 2012 U.S. Dist. LEXIS 44518, at *8 (M.D. Fla. Mar. 30, 2012) ("A minimal burden should not be confused with a nonexistent burden. Absent affidavits, declarations, or other detailed allegations beyond mere arguments by Plaintiffs' counsel, the Court cannot grant conditional certification.").

To succeed in her renewed motion, Plaintiff must show that there are other employees who (1) are "similarly situated," and who (2) desire to opt into the action. *Dybach*, 942 F.2d at 1567-68.  Plaintiff cannot meet her burden based only on her own conclusory allegations.  *Cartner v. Hewitt Assocs., LLC*, 2009 U.S. Dist. LEXIS 126969, at *10 (M.D. Fla. Mar. 31, 2010).  Instead, she must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996); *see also Hart v. JPMorgan Chase Bank, N.A.,* 2012 U.S. Dist. LEXIS 175983, at *4 (M.D. Fla. Dec. 12, 2012) (denying conditional certification based, in part, on "the overwhelming number of declarations" submitted by the defendant); *Wombles v. Title Max of Ala., Inc.,* 2005 U.S. Dist. LEXIS

34733, at *8-9 (M.D. Ala. Dec. 7, 2005) (opining that plaintiffs' affidavits and two consents to join were not sufficient to engage defendant's 46 affidavits to the contrary).

If Plaintiff does not meet her burden, "the Court should decline certification of a collective action to avoid the stirring up of litigation through unwarranted solicitation." *Aguirre v. Aventura's Finest Hand Car Wash At Gulfstream Park, Inc.,* 2014 U.S. Dist. LEXIS 101728, at *6 (S.D. Fla. July 25, 2014) (quotations omitted). Indeed, "federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." *Hart,* 2012 U.S. Dist. LEXIS 175983, at *13 (quotations omitted). Even when plaintiffs have met their burden, the decision to authorize notice of an FLSA action to putative class members remains soundly within the discretion of the Court. *Hipp,* 252 F.3d 1208 at 1217. "To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved." *Basco v. Wal-Mart Stores, Inc.,* 2004 U.S. Dist. LEXIS 12441, at *14 (E.D. La. July 2, 2004).

## II.  PLAINTIFF HAS FAILED TO SHOW THAT SHE IS SIMILARLY-SITUATED TO THE PUTATIVE CLASS.

Plaintiff must demonstrate that she and the putative class are "similarly situated." Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. *Hipp,* 252 F.3d at 1219. Here, Plaintiff again relies on her the unsupported, conclusory assertion that she and the putative class members are "similarly situated" or have "typical claims" because they

were "subjected to working off-the-clock." (Dkt. #53 at 1-2.) But Plaintiff has still failed to identify a company-wide policy or plan that violates the FLSA. Moreover, the 17 declarations submitted by Percepta demonstrate that Plaintiff's experience was the exception, rather than the rule. Accordingly, this action is not appropriate for collective action treatment.

### A.       Plaintiff Has Not Identified A Single Decision, Policy, or Plan.

To support her renewed motion, Plaintiff has only submitted two declarations: her own, and one from Opt-In Plaintiff Estes. First, declarations from the two other Opt-In Plaintiffs Davino and Hamilton are glaringly absent. Second, neither of Plaintiff's submitted declarations point to a written policy that required her or Opt-In Plaintiff Estes to work without compensation or to perform any work while they were "off the clock." There is simply no such policy. Even so, evidence that *two* employees were not compensated for their work is insufficient to merit conditional certification, since there must be "substantial allegations that [Plaintiff and] potential members were together the victims of a single decision, policy, or plan" that violated the law. *Hart,* 2012 U.S. Dist. LEXIS 175983, at *14 (quotations omitted); *see also Lewis-Gursky*, 2017 U.S. Dist. LEXIS 31135, at *12 (denying conditional certification where plaintiffs had not shown a reasonable basis for their claim that the members of the proposed collective are similarly situated based on their job requirements and pay provisions).

Plaintiff's two declarations from herself and Opt-In Plaintiff Estes do not meet this standard. The declarations still do not, for example, explain the following:

- whether they were clocked in to the timekeeping system while they worked but were not compensated for that time (e.g., time sheets were altered to delete

overtime hours worked);

- whether the timekeeping system would not let them clock in until the scheduled start time of their shift;

- whether the timekeeping system automatically clocked them out at the scheduled end time of their shift, even if they were still working;

- whether their manager directed them to perform work without clocking in to the timekeeping system; or

- whether they reported the alleged off-the-clock activity to their manager or if the manager otherwise knew that they performed work for which they were not paid.

Plaintiff's declarations also do not describe what timekeeping system they and "other similarly situated employees" used to record their time for payroll purposes, or how they recorded their time in that system.  Nor do Plaintiff's declarations identify a single week in which they were not paid overtime, or attach a single piece of documentation, such as paystubs or timekeeping records, to support their vague attestations.  *See Rojas v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 98716, at *8 (S.D. Fla. June 27, 2017) (denying conditional certification where plaintiff only submitted his own declaration with conclusory allegations).

Additionally, Plaintiff's own declaration still fails to acknowledge that she frequently recorded and was paid overtime — despite claiming in her declaration that her supervisor, Clinton Yates, generally "informed" her that "no overtime [was] available." (Dkt. # 53-1 at ¶ 11.)   Indeed, during Plaintiff's employment, Percepta paid her for 346.44 hours of overtime.  (Dkt. # 50-1 at Ex. A.)  Was Plaintiff paid for some overtime hours but not others? If so, why?  Tellingly, Plaintiff fails to address this in her renewed motion and declaration.  And as this Court has already observed, "the fact that Plaintiff

was paid for 346.44 hours of overtime . . . suggests that [Percepta]'s alleged failure to pay Plaintiff overtime was not part of a common policy, plan, or scheme to violate the FLSA." (Dkt. # 52 at n.2.)

The omissions in Plaintiff's declarations, however, were not by mistake.  If Plaintiff had provided more detail, it would have highlighted the fact that no FLSA violations have occurred.  But Plaintiff cannot avoid her burden of demonstrating that she and the putative collective were subject to a company-wide practice by submitting, at best, two vague declarations with minimal factual support.  *See Gross v. Pelican Point Seafood of Tarpon Springs, LLC,* 2017 U.S. Dist. LEXIS 122064, at *4-5 (M.D. Fla. Aug. 3, 2017) (denying conditional certification where exclusively relied on his own declaration, which failed to address how he and the three individuals who filed opt-in notices were similarly situated with respect to their job duties and responsibilities); *Carruthers v. Keiser Sch., Inc.*, 2010 U.S. Dist. LEXIS 133186 (M.D. Fla. Dec. 3, 2010) (denying conditional certification because "Plaintiff never articulates the 'policies and practices' . . . other than the failure to pay for working through lunch.  This bare-bones allegation without more is insufficient.  Plaintiff provides no details establishing the particular circumstances surrounding the allegation that Defendant failed to pay Plaintiff and the opt-in Plaintiffs for working through their lunches.").  And as this Court noted in denying Plaintiff's first motion to conditionally certify her class, "Plaintiff provided no detailed allegations to suggest that [off-the-clock work] was a widespread practice that affected all 1,858 putative members."  (Dkt. # 52 at n.2.)

Finally, although Plaintiff's and Opt-In Plaintiff Estes's declarations identify their

supervisor, Clinton Yates, and Layton asserts that Yates told her that she "needed to do whatever was needed to get the job done including working off-the-clock" (Dkt. # 53-1 at ¶¶ 9-10; Dkt. # 53-2 at ¶ 9), this is still insufficient to meet Plaintiff's burden of showing that she and 1,858 others were subject to a common policy or plan that violated the FLSA. Specifically, Plaintiff must offer evidence that "the reason why the employees were not compensated . . . is not because of human error or a rogue store manager, but because of a corporate decision to ignore [defendant's] published policies and refuse to pay for [certain tasks]." *Thompson v. Speedway SuperAmerica LLC*, 2009 U.S. Dist. LEXIS 3816, at *6 (D. Minn. Jan. 20, 2009).  Further to this point, Opt-In Plaintiff Estes's declaration does not state that Yates told her to work "off-the-clock."  (*See* Dkt. # 53-2.)  Nor does either declaration assert that Yates instructed them to clock out but keep working, or affirmatively provide a specific instance when they actually worked off the clock or worked overtime hours for which they were not paid.  Vague attestations about one manager are insufficient to pass muster for conditional certification — especially where, as discussed below, Percepta has submitted 17 declarations to the contrary.

At best, Plaintiff has only offered evidence of isolated and sporadic incidents of off-the-clock work.  But determining when an employee allegedly worked overtime off the clock would have to be determined on an individual-by-individual basis for each and every workweek — which is not susceptible to collective treatment  *See Hart,* 2012 U.S. Dist. LEXIS 175983, at *17 (denying conditional certification where individualized inquiries would be necessary to determine "whether plaintiffs actually 'worked off the clock,' whether plaintiffs modified their time records to reflect the actual time worked,

whether plaintiffs' supervisors were aware of any 'off-the-clock' work, . . . and whether any 'off-the-clock' fell within the *de minimis* exception to the FLSA"); *Carruthers,* 2010 U.S. Dist. LEXIS 133186, at *8 ("Plaintiff provides no details establishing the particular circumstances surrounding the allegation that Defendant failed to pay Plaintiff and the opt-in Plaintiffs for working through their lunches.  The fact that violations of the FLSA occurred is not enough to establish similarity for purposes of conditional certification as this alone does not establish a pattern and practice without showing that the violations were more than sporadic occurrences.").  As one court has explained:

> To conclude that an employee may establish the 'similarly situated' requirement simply by claiming violations of the law by the same employer, would be to conclude that any time employees alleged unpaid overtime due from the same employer, such employees would be "similarly situated" and be allowed to proceed with a collective action Such a result is counter to the requirement that plaintiffs make "substantial and detailed allegations of FLSA violations and provide evidence to support" that the plaintiff and the potential collective action members are "similarly situated."

*Ledbetter v. Pruitt Corp.*, 2007 U.S. Dist. LEXIS 10243, at *15 (M.D. Ga. Feb. 12, 2007) (citations omitted).  In short, Plaintiff's two declarations do not identify any single decision, policy, or plan that violates the FLSA, let alone a company-wide one to do so, and conditional certification should be denied.

### B.    Percepta's Declarations Highlight That Plaintiff's Experience Is Not Representative.

The employee declarations offered by Percepta establish additional differences between Plaintiff's and Opt-In Plaintiff Estes's alleged experience and those of the members of the putative class.  These declarations are from 17 different employees who worked at Percepta's call center in Melbourne, Florida — the same as Plaintiff and Opt-

10

In Plaintiff Estes.  (Dkt. # 50-2.)  These employees state that they:

- have always clocked in before they do any work (*e.g.*, Park Decl. at ¶ 1; Boehm Decl. at ¶ 5 ("When I sit down at my computer to start my shift, the first thing I do after logging into the computer is open Percepta's phone program, Avaya.  Avaya automatically clocks me in to Kronos, Percepta's timekeeping system."); Hayward Decl. at ¶ 4 ("Percepta utilizes the Avaya phone system.  As soon as I log into Avaya, I am automatically logged into Percepta's timekeeping system, Kronos.  After I get to my desk, I log into my computer and then log into Avaya as it is nearly impossible to perform my job without the program."); Berrios Decl. at ¶ 4 ("As soon as we log into Avaya, we are automatically logged into our timekeeping system, Kronos.  I'm usually logged into Avaya within two or three minutes after I get to my desk at the start of my shift."));

- do not clock out until they are done working for the day (*e.g.*, Hayward Decl. at ¶ 7, Ronda Decl. at ¶ 7; Fabian Decl. at ¶ 3 ("My supervisor is always clear that I am to be clocked in when I'm working.  Additionally, my supervisor has reminded us in weekly meetings not to work off the clock."); Dew Decl. at ¶ 9 ("If a call extends past my scheduled end time, I stay on the call until it is complete, wrap up any related paperwork, and then log out of Avaya.") Colimon Decl. at ¶ 7 ("I do not log off Avaya until I am done with my work for the day.  If I am in the middle of a call with a customer when my shift comes to an end, I will stay logged into Avaya and continue the call until the customer's issue is resolved."));

- are able to review and approve their time regularly to make sure it is accurate (*e.g.*, Miller Decl. at ¶¶ 5-6; Ronda Decl. at ¶ 5; Williams Decl. at ¶ 6; Hayward Decl. at ¶ 5; Dew Decl. at ¶ 5 ("I am instructed to (and do) check my time daily in Kronos.  Additionally, I am required (and do) approve my time on the Monday before payday.  If there are any errors in my time, I send an email to [my] supervisor to have it corrected."); Stephens Decl. at ¶ 8 ("Although Percepta wants employees to review their time entries in Kronos every day, I typically review my entries once or twice a week.  I also have to review and approve my time in Kronos every two weeks as part of the payroll process.  I don't recall ever noticing an error with my time in Kronos."));

- have never been asked or expected to work "off the clock" (*e.g.*, Mitchell Decl. at ¶ 7; Kenny Decl. at ¶ 10; Dew Decl. at ¶ 10 ("I have never been told to clock out and continue working. . . . [M]y supervisor has made it clear to me that we are to be logged in when working.  Nor would I ever conduct work when not clocked in as doing so would be illogical as I have every intention of getting paid for my time at work."); Stephens Decl. at ¶¶ 10-11 ("I have never been asked or expected to work without being on the clock . . . I'm not going

to work for free."); Park Decl. at ¶ 5 ("I understand that is Percepta's policy for employees to always be on the clock when working.  Indeed, my supervisor has made it clear that if I am working, I am to be on the clock. I would never work while not on the clock."));

- have never heard or observed managers asking or expecting other employees to work "off the clock" (*e.g.*, Stephens Decl. at ¶ 10; Raszipovits Decl. at ¶ 8; Miller Decl. at ¶ 11 ("I do not know of anyone being asked or expected to work off the clock.  In fact, my supervisors are explicit that if you are working, you must be on the clock"); Anderson Decl. at ¶¶ 10-11 ("Supervisors emphasize that you should be on the clock when working, and I understand that it is Percepta's policy that I should be on the clock if I am doing work.  I have never been asked or expected to work without being on the clock, and I do not know of anyone being asked or expected to work off the clock.")); and

- have always been paid for their hours worked, including overtime (*e.g.*, Miller Decl. at ¶¶ 2, 12; Mitchell Decl. at ¶ 8; Fabian Decl. at ¶ 7 ("I have never had an issue with Percepta not paying me time and a half for my overtime work."); Anderson Decl. at ¶ 13 ("During the course of my employment at Percepta, I have been paid for all time worked and have been paid time and one-half my rate of pay for those weeks in which I have worked over forty hours."); Kenny Decl. at ¶ 2 ("I have always received overtime pay at time and one-half my hourly rate when I have worked more than forty hours during a single week.")).

Moreover, these employees explained that their time is automatically recorded in Percepta's timekeeping system, Kronos, as soon as they log onto Avaya, Percepta's phone system on their work computers.  *See, e.g.*, Ronda Decl. at ¶ 4 ("The first thing I do when I start my shift (after logging into the computer generally) is to open Avaya. Opening Avaya clocks me into our timekeeping program, Kronos.").  Employees cannot make calls unless they are logged onto the Avaya system (and, thus, "on the clock").  *Put differently, once employees clock out, they are not longer able to use the phones and handle customer service calls.  See, e.g.*, Raszipovits Decl. at ¶ 4 ("I do not have an actual phone at my work area.  Instead, I have to log into a system called Avaya through my computer.  Once I'm logged into Avaya, I can take and make phone calls through my

12

headset.  If I'm not logged into Avaya, I can't handle calls."); Williams Decl. at ¶ 4 ("Avaya is the phone system I use at work, and I cannot make or take phone calls unless I'm logged into Avaya."); Stephens Decl. at ¶ 4 ("Until I log onto Avaya, I cannot make or take phone calls.  I do not have an actual phone at my desk.  Instead, I have to log into Avaya through the Avaya icon on my desktop.  Once I'm logged into Avaya, I can use the phone through a headset.").  The employees also noted that they are not allowed to be at their work stations when they are not working.  *See, e.g.*, Colimon Decl. at ¶ 9 ("[M]y supervisor is explicit that if you are working, you must be on the clock.  And my supervisor does not allow employees to be on the call center floor when they are not logged into Avaya."); Park Decl. at ¶ 10 ("My supervisor does not permit employees to remain at their desk during their lunch break in order to avoid a situation where an employee is working when they should not be or are not logged in."); Dew Decl. at ¶ 8 ("I am instructed not to be at my computer terminal if I am not working.  My supervisors are clear that I am not to work when not on the clock (logged into Avaya).  I am not even permitted to eat lunch at my desk.").

These declarations are factually specific, based on personal knowledge, and demonstrate that Plaintiff's (and Opt-In Plaintiff Estes's) alleged experience of working off the clock was uncommon, if it happened at all.  For this additional reason, the Court should deny to certify Plaintiff's collective action.

### C.    The Court Should Not Consider Ms. Cortes's Declaration.

To support her renewed motion, Plaintiff has submitted a declaration from Alice Cortes, a non-party who is a former Percepta employee.  (Dkt. # 53-3.)  The Court should

disregard Ms. Cortes's declaration for several reasons.  First, as this Court may already be aware, Ms. Cortes has filed two lawsuits against Percepta, which are currently pending in the Middle District of Florida: Case Nos. 6:17-cv-00750-CEM-GJK (discrimination) and 6:17-cv-00758-CEM-GJK (FLSA collective action).  Percepta requests that the Court take judicial notice of these dockets and, in particular, Docket Nos. 56 and 59 in Case No. 6:17-cv-00750-CEM-GJK, and Docket Nos. 1, 66 and 71 in Case No. 6:17-cv-00758-CEM-GJK.[2]  *See, e.g., Mellen v. Florida*, 2014 U.S. Dist. LEXIS 143980, at *11 (M.D. Fla. Aug. 25, 2014) ("Judicial notice of [court] proceedings and th[eir] disposition is appropriate because they are readily and accurately determined from the docket sheet, and its accuracy cannot reasonably be questioned."); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 2007 U.S. Dist. LEXIS 84305, at *16 n.2 (M.D. Fla. Nov. 14, 2007) (taking judicial notice of related cases and docket entries).

As detailed in the aforementioned docket entries for each case, Defendant Ford Motor Company ("Ford") agreed to reschedule Ms. Cortes's deposition set for July 25, 2018 because "On Tuesday, July 24, 2018, [Cortes] sent an email the Magistrate Judge's chambers asserting that she had suffered a seizure the previous day, and attaching documentation from her medical provider in support."  (Case No. 6:17-cv-00750-CEM-GJK, Dkt. # 56 at 2; Case No. 6:17-cv-00758-CEM-GJK, Dkt. # 66 at 2.)  The Court subsequently relied on Ms. Cortes's submissions to the Magistrate Judge (and Ford's

---

[2] "The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally know within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201. The dockets of Case Nos. 6:17-cv-00750-CEM-GJK and 6:17-cv-00758-CEM-GJK are within this Court's territorial jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Thus, these dockets are appropriate for judicial notice by this Court.

statements about them) when it denied her motions for a continuance as moot.  (Case No. 6:17-cv-00750-CEM-GJK, Dkt. # 59 at 2; Case No. 6:17-cv-00758-CEM-GJK, Dkt. # 71 at 2.)  Curiously, however, Ms. Cortes's declaration in this case is dated July 26, 2018 — just three days after she allegedly suffered a seizure, and two days after she submitted documents to the Court asserting she was medically unable to sit for her deposition for that reason.  If Ms. Cortes was medically unable to be deposed on July 25th, could she necessarily have had capacity to sign a declaration, under penalty of perjury, on July 26th?

Second, the Court should disregard Ms. Cortes's declaration because she clearly lacks personal knowledge and because her statements directly contradict Percepta's declarations, made by employees *with* personal knowledge.  Specifically, as Ms. Cortes states in her declaration, she worked for Percepta as a Zone Manager, not a call center/customer service representative like Plaintiff and her putative class in this case. (Dkt. # 53-3 at ¶ 6.)  In this role, Ms. Cortes was classified as exempt under the FLSA and did not record her hours worked, unlike Plaintiff and the putative class in this case. (Case No. 6:17-cv-00758-CEM-GJK, Dkt. # 1 at ¶¶ 11, 15.)  Nor did Ms. Cortes supervise Plaintiff or any other call center employees.  It follows, therefore, that Ms. Cortes did not have experience clocking in or out or using Kronos, Percepta's timekeeping system, during her employment with Percepta.

So, what could form the basis of Ms. Cortes's purported knowledge that "[i]t was a common practice and procedure for Percepta to require call center employees to engage in off-the-clock work," or "if a call was received at the last minute of an employee's shift they were required to work off the clock to complete the call"?  (Dkt. # 53-3 at ¶¶ 8-9.)

Her declaration is glaringly silent on these crucial details.  For example, Ms. Cortes does not state that she managed, supervised, or worked with Plaintiff or any members of the putative class.  She does not state how she knew that employees' shifts were "scheduled to end" but "observed" them still working, or how she knew whether these employees were clocked in or working "off the clock."  (*Id.* at ¶¶ 9-10.)  She does not state how she knows that off the clock work, if it happened at all, was a "common practice and procedure" or that Percepta "require[d]" employees to work off the clock.  She does not even identify a single employee that worked "off the clock."

Moreover, Ms. Cortes's reckless, conclusory statements directly contradict Percepta's declarations, which explain that it is **impossible** for employees to handle calls unless they are logged onto the Avaya phone system (which, in turn, automatically records time in Kronos).  *See, supra*, Section II.B.  Put differently, if, as Ms. Cortes claims, employees clocked out during customer calls that ran past their scheduled shifts, then the calls would immediately be terminated.  Indeed, Plaintiff does not even allege that she handled phone calls "off the clock."  To demonstrate Ms. Cortes's clear perjury, Percepta would welcome the opportunity to depose her or question her before the Court about the statements made in her sworn declaration.

In short, Ms. Cortes's declaration (and its submission by Plaintiff) is a dangerous attempt to mislead the Court, and the Court should disregard it.[3]

---

[3] Percepta reserves the right to move to strike Ms. Cortes's allegations and to seek sanctions against Plaintiff.

III.    **PLAINTIFF HAS FAILED TO SHOW THAT OTHERS DESIRE TO JOIN THIS ACTION.**

"Notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit."  *Hart*, 2012 U.S. Dist. LEXIS 175983, at *11 (emphasis in original).  Rather, Plaintiff must show that others desire to join the lawsuit before certification and notice will be authorized.  *Id.*  "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees."  *Poggi v. Humana at Home 1, Inc.*, 2017 U.S. Dist. LEXIS 179252, at *11-12 (M.D. Fla. Oct. 30, 2017) (quotations omitted).  To support her motion, Plaintiff offers two declaration and points to the fact that three individuals — two of whom failed to submit declarations — have joined this lawsuit.  This is insufficient.

Out of a putative class of approximately 1,858 people, Plaintiff has found only three individuals interested in joining this suit since it was filed *more than one year ago*, representing less than 0.002% of the putative class.  (Dkt. # 50-1 at ¶ 4.)  Such a poor showing fails to prove that a class exists – in fact, as many courts have observed, it demonstrates the opposite.  *See, e.g., Hart*, 2012 U.S. Dist. LEXIS 175983, at *13 (concluding that the plaintiff failed to show that others wished to join the lawsuit "[b]ased on the minimal number of potential opt-in plaintiffs identified by Plaintiff compared to the total number of individuals employed by [the defendant]"); *Robinson v. Dolgencorp, Inc.*, 2006 U.S. Dist. LEXIS 85471, at *19 (M.D. Fla. Nov. 13, 2006) (finding that the plaintiff failed to show that others desired to join the action where only three employees out of a potential class of 58,000 nation-wide employees and 26,000 employed in Florida

filed affidavits); *Rodgers v. CVS Pharm., Inc.*, 2006 U.S. Dist. LEXIS 23272, at *14-15 (M.D. Fla. Mar. 22, 2006) (denying motion for conditional certification where only two people had opted-in in the year since the lawsuit had been pending).

Nor is Plaintiff's or Opt-In Plaintiff Estes's conclusory statement in their declaration — "I know that there are other current and/or former employees who wish to join the above referenced collective action if they are provided notice of their rights to opt-in the litigation" (Dkt. # 53-1, at ¶ 15; Dkt. # 53-2 at ¶ 15) — adequate.  *See Poggi*, 2017 U.S. Dist. LEXIS 179252, at *15-17 (rejecting vague assertions that others desired to join the lawsuit contained in plaintiff's declarations); *Gross v. Pelican Point Seafood of Tarpon Springs, LLC*, 2017 U.S. Dist. LEXIS 122064, at *3 (M.D. Fla. Aug. 3, 2017) ("Although it is a lenient standard, mere belief or unsupported expectations that additional plaintiffs will come forward are insufficient to justify certification."); *Ramirez v. Urban Outfitters, Inc.*, 2014 U.S. Dist. LEXIS 190816, at *8 (M.D. Fla. April 22, 2014) (stating that "[u]nsupported beliefs and expectations that others might wish to opt in is entirely insufficient to justify certification of a collective action and court supervised notice to a potential class").  "Instead, Plaintiffs must, at a minimum, identify specific employees – beyond the current ones – who desire to join the lawsuit."  *Gonzalez v. Winn-Dixie Stores, Inc.*, 2014 U.S. Dist. LEXIS 130930, at *12 (S.D. Fla. Sept. 18, 2014); *see also Rodgers*, 2006 U.S. Dist. LEXIS 23272, at *15 (denying conditional certification where the plaintiff and his two declarants failed to identify others who expressed a desire to join the lawsuit and holding that their mere "beliefs and expectations" that others may desire to do so are insufficient).  Yet Plaintiff's declarations do not identify any specific

employees of 1,858 class members, or provide a factual foundation for their contention that others would join the case.  Because Plaintiff has failed to offer evidence that others are interested in joining this lawsuit, her motion should be denied for this reason alone. *See Gonzalez*, 2014 U.S. Dist. LEXIS 130930, at *12 ("Plaintiffs' failure to specifically identify others in the class precludes conditional certification.").

## IV.   PLAINTIFF HAS FAILED TO SHOW WHY HER RENEWED MOTION IS NOT UNTIMELY.

In its order denying Plaintiff's first motion for conditional certification, this Court noted that "some courts have found that a plaintiff's motion for conditional certification is untimely if it is filed after the deadline to add parties or amend pleadings."  (Dkt. # 52 at 5.)  In her renewed motion, Plaintiff blames her delay on her motions to amend her Complaint, which she filed in January 2018 and March 2018, respectively.  (Dkt. # 53 at 8.)  Plaintiff claims that she "sought to have the additional party [Ford Motor Company] added before moving for conditional certification . . . to avoid having to latter[sic] amend the notice-to[sic] employees of their opt-in rights in order to add the new party."  (*Id.*) But Plaintiff's arguments are without merit and should not excuse her delay.   For example, Plaintiff offers no reason why she did not or could not simultaneously move for conditional certification while her motions to amend — filed approximately five and seven months ago — were still pending.  Nor does Plaintiff explain why, if her motion for conditional certification were granted, she could not have stayed distribution of class notice pending resolution of her motions to amend.  At the very least, Plaintiff also offers no excuse for why did not move to amend the scheduling order to accommodate her contemplated delays *which she knew about since at least January 2018, well before the*

*deadline to add parties has expired.* And Plaintiff fails to cite any case law to support her arguments as to why this Court should forgive her failure to move for conditional certification sooner. *See Quijano v. Tuffy Assocs. Corp.,* 2014 U.S. Dist. LEXIS 116607, at *4 (M.D. Fla. Aug. 21, 2014) (citing cases). For this additional reason, the Court should deny Plaintiff's renewed motion for conditional certification.

## V. PERCEPTA OBJECTS TO PLAINTIFF'S PROPOSED METHOD OF CLASS NOTICE.

In the event the Court grants Plaintiff's motion, Percepta objects to Plaintiff's proposed method of class notice. Specifically, Percepta objects to Plaintiff's request that the notice be posted at Percepta's offices. There is no evidence that posting is necessary here. *Harris v. Performance Trasp., LLC,* 2015 U.S. Dist. LEXIS 33579, at *12 (M.D. Fla. Feb. 13, 2015) ("Plaintiff[']s request to post the Notice in Defendant's business is premature. Generally, posting the notice at a defendant's business is permitted when a defendant provides inadequate list of names to the plaintiff or has otherwise failed to coo prorate in the litigation."); *Green v. Grand Villa,* 2015 U.S. Dist. LEXIS 162328, at *10 (M.D. Fla. Dec. 3, 2015) ("Courts in this district have found that first class mail is ordinarily sufficient to notify class members that, without circumstances to warrant otherwise, one notice is enough."). Percepta has the last known addresses for all of the potential class members and will agree on a process to search for any class members with an invalid address. Accordingly, any notice should be sent by mail only.

## CONCLUSION

Based on the foregoing, Percepta respectfully requests that the Court deny Plaintiff's renewed motion for conditional certification and notice.

**DATED:** August 17, 2018        Respectfully Submitted,

By:   */s/ Arthur J. Rooney*
      Arthur J. Rooney

Benjamin C. Davis
Florida Bar No. 110734
benjamin.davis@bakermckenzie.com
Baker & McKenzie LLP
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

Arthur J. Rooney
*Admitted Pro Hac Vice*
arthur.rooney@bakermckenzie.com
Laura E. Zabele
*Admitted Pro Hac Vice*
laura.zabele@bakermckenzie.com
Baker & McKenzie LLP
300 E. Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone: 312-861-8000
Facsimile: 312-861-2899

*Attorneys for Percepta LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: */s/ Arthur J. Rooney*      
Arthur J. Rooney